**SAIF FOOD MARKET, Relator,**

v.

**COMMISSIONER, STATE of Minnesota, DEPARTMENT OF HEALTH, Respondent.**

**No. C7–03–192.**

Court of Appeals of Minnesota.

July 8, 2003.

Phillip S. Resnick, Reid M. Goldetsky, Resnick & Seiler, P.L.L.P., Minneapolis, MN, for relator.

Mike Hatch, Attorney, Jennifer Beens Harper, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge, HARTEN, Judge, and STONEBURNER, Judge.

## OPINION

HARTEN, Judge.

Respondent Minnesota Department of Health disqualified relator, a vendor, from participating in the Special Supplemental Nutrition Program for Women, Infants and Children (WIC) for six years. An administrative law judge (ALJ) found by a preponderance of the evidence that relator violated WIC rules by purchasing a WIC voucher for cash and tobacco and exchanging tobacco for a WIC vouchers. The Commissioner of Health adopted the ALJ's report and imposed the recommended six-year disqualification. Relator appeals by writ of certiorari, arguing that respondent did not prove the violations and failed to provide adequate notice of prior violations.

## FACTS

The Special Supplemental Nutrition Program for Women, Infants and Children (WIC) is a federally funded, state managed program that provides pregnant women, nursing mothers, infants, and children up to age five with nutritional supplements and other health care services. In August 2001, relator Saif Food Market and respondent Minnesota Department of Health entered into an agreement allowing relator to participate as a WIC vendor. Relator was permitted to accept WIC vouchers in exchange for specific food products but prohibited from purchasing vouchers for cash or exchanging tobacco for vouchers. Respondent ensures compliance with WIC rules through covert investigations.

On 11 December 2001, respondent sent an undercover investigator to relator with two WIC vouchers, each allowing her to

purchase three cans of infant formula. Before entering the store, the investigator disposed of a cigarette as relator's owner, Abdul Muwahid, watched. After the investigator exchanged the vouchers for the infant formula, Muwahid gave her a pack of cigarettes. The investigator did not request the cigarettes.

On 2 January 2002, the same investigator returned to relator and presented a voucher for four cans of infant formula. Muwahid filled in the voucher for $63.96 (the cost of four cans of formula) and told the investigator that he would buy back the formula if she returned later. The next day, the investigator returned with the four cans of formula. She gave the formula to Muwahid, and Muwahid gave her $20 in cash and a pack of cigarettes. Relator later redeemed the voucher for $63.96.

Respondent determined that relator violated WIC rules by exchanging cash and tobacco for a WIC voucher. On 4 February 2002, respondent notified relator that it was disqualified from participating in WIC for six years. Relator appealed. An ALJ found by a preponderance of the evidence that relator bought a WIC voucher for cash and exchanged tobacco for a voucher in violation of Minn. R. 4617.0084, 7 C.F.R. § 246.12(k)(1), and the Retail Food Vendor Agreement. On 30 December 2002, the commissioner issued an order adopting the ALJ's report and imposed on relator the recommended disqualification. Relator challenges the disqualification by writ of certiorari.

## ISSUES

1. Does substantial evidence support relator's disqualification?

2. Does respondent's failure to provide notice of relator's alleged prior violations preclude it from disqualifying relator for the charged violations?

## ANALYSIS

### 1. Substantial Evidence

■ We defer to the agency's factfinding process and consider only whether substantial evidence supports its decision. *Dokmo v. Indep. Sch. Dist. No. 11, Anoka–Hennepin*, 459 N.W.2d 671, 675 (Minn. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Excess Surplus Status of Blue Cross and Blue Shield of Minn.*, 624 N.W.2d 264, 274 (Minn.2001) (citation omitted).

■ The commissioner adopted the ALJ's detailed findings of fact and the conclusion that relator purchased a WIC voucher for cash in violation of Minn. R. 4617.0084, subp. 3(A). Substantial evidence supports the commissioner's decision. The investigator testified that she purchased $63.96 worth of infant formula using a WIC voucher, that Muwahid told her that he would purchase the formula from her if she came back another day, and that Muwahid gave her $20 cash and a pack of cigarettes in exchange for the formula the next day. Her testimony was corroborated by the lead investigator's testimony; other evidence corroborated both investigators' testimony and showed that Muwahid subsequently redeemed the WIC voucher for $63.96.

■ Relator contends that it did not buy a voucher for cash but merely committed the lesser violation of allowing the return of infant formula purchased with a WIC voucher.[1] But the record supports

1.  Relator also asserts that the department did not disqualify it for an earlier incident involv-

    ing the same conduct, suggesting that its disqualification for the charged violations was

the ALJ's finding that the purchase of the formula with the voucher and the return of the formula the next day for cash were part of a single transaction. Moreover, the ALJ found that

> it is not credible to believe that Muwahid did not know that [his] actions were improper. The fact that he redeemed the January 2 voucher for $63.96, but gave in return only $20.00 and one pack of cigarettes, is more than enough to refute any claim of ignorance.

We defer to the agency's credibility determinations. *See Senior v. City of Edina*, 547 N.W.2d 411, 416 (Minn.App.1996) (reviewing court does not retry facts or challenge agency's credibility determinations). Relator presumably would have returned the full $63.96, not $20 and a pack of cigarettes, if it had been simply allowing the investigator to return the formula. Substantial evidence supports the commissioner's decision that relator purchased a WIC voucher for cash.[2]

## 2. Notice of Prior Violations

■ Relator argues that we must reverse its disqualification because the department failed to follow WIC rules and its own procedures when it did not notify relator of alleged prior violations of Minn. R. 4617.0084, subp. 12 (2000). Relator's argument is not properly before this court, however, because it was not raised or considered below. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (this court will generally not consider matters not argued and considered in court below). The ALJ did not consider whether the failure to warn relator of prior, less serious violations precluded disqualifying relator for the charged violations.

■ Even if relator's argument were properly before this court, we conclude that it lacks merit. The lead investigator testified that the prior violations were part of a separate investigation. Relator cites no authority for the proposition that failing to issue a notice of violation in one investigation precludes sanctions for violations in later investigations. Moreover, relator received a warning: the Retail Food Vendor Agreement provided that a vendor is disqualified "for six years if the vendor * * * buys or sells one or more vouchers for cash" and "for three years if the vendor provides any * * * tobacco product in exchange for one or more vouchers."

Relator relies on respondent's Statement of Need and Reasonableness (SONAR) to support its argument that it should have been given notice. Relator's reliance is misplaced: the SONAR explains the reasoning behind providing notice for violations of Minn. R. 4617.0084, subps. 7–9, 12, and 13, but relator was charged with violating subparts 3 and 4. Moreover, the SONAR provides that notice allows a vendor the opportunity to correct the alleged violation. Relator does not explain how notice of providing incentives and returning WIC items would help it correct its violations of buying vouchers for cash and exchanging vouchers for ciga-

arbitrary and capricious. *See* Minn.Stat. § 14.69 (2002) (this court may reverse or modify an "arbitrary or capricious" agency decision). Although a witness testified that an investigator had returned infant formula to relator for cash and cigarettes on another occasion, the witness did not testify as to the date or circumstances and explained that the incident was not pursued because Muwahid had not initiated the exchange.

2. Because we affirm the commissioner's disqualification of relator for selling a WIC voucher for cash, we do not address relator's arguments regarding the less serious offense of exchanging tobacco for vouchers. *See* Minn. R. 4617.0084, subp. 17(a)(2) (commissioner shall disqualify vendor for period corresponding to most serious violation when vendor commits multiple violations during a single investigation).

rettes. Failure to issue notice of prior alleged violations of one subpart of Minn. R. 4617.0084 does not preclude disqualification for a later violation of another subpart of Minn. R. 4617.0084.

### DECISION

Substantial evidence supports the disqualification of relator from WIC for six years for selling vouchers for cash, and respondent was not required to provide relator with notice of prior alleged violations before disqualifying it for the charged violations.

**Affirmed.**